Next matter is U.S. v. Shakir or Shakir-Williams Good morning, Your Honors, and may it please the Court. My name is Keith Donohue, and I'm here from the Defender's Office on behalf of Shakir-Williams. With me at counsel's table is Robert Epstein, also of the Defender's Office. I noticed, Epstein, I haven't seen you before, but you're up against heavy artillery from the U.S. Attorney's Office today. I'll try to manage with our less powerful artillery at times. Whether you win or lose, good luck to you. You're up against it. The sentence here, Your Honors, is illegal for three reasons. Help me before we get into that. I'm not sure I totally understand your argument. Are you saying that there's a 24-month cap period on confinement, or are you saying that for any given revocation, there's a 24-month cap, or are you saying that there's a 24-month cap just on the imprisonments that are ordered pursuant to revoked supervisory. I'm not sure how you're looking at subsection D. Well, we believe at this point there's a 24-month cap on any one revocation or on the aggregate of all revocations. Twenty-four months imprisonment. Twenty-four months of imprisonment and house arrest in combination, not just imprisonment, Your Honor, but imprisonment and home detention cannot combine in excess of 24 months. That's putting the rabbit in the hat. Yeah, okay. I get you. Okay. Good. Are we in agreement that we're reviewing for plain error here? Yes, we are, Your Honor. Well, where the issue involved appears to arguably at least involve a circuit split and where the issue that we're talking about that brings us all here is one month of home Plain error has to be one plain. It's got to be obvious. It's something the judge should have known even though he wasn't – he or she was not flagged about it. And normally it has to be something that would result in serious prejudice and miscarriage of justice. Is this not – how can we – how could we say this was plain error when there is arguably a circuit split and when what we're arguing over is one month home detention? Well, to begin with the fact that it's one month home detention, this Court has clearly held that any sentence unauthorized as a matter of law has an effect on substantial rights and therefore – Let me be clear. I mean, we have said that. There are other cases which suggest that we haven't said that. I'm not sure that that's very clear. What would you refer us to? What's the best case there from your standpoint of view? I believe United States v. Coles states that squarely, Your Honor. Under Olana we said clear under current law. Right. I'd like to turn to the question of clear. I was just addressing here the question of prejudice or substantial rights. I don't believe that prong can be in debate at all. With respect to whether the error was clear, the first point is that we're looking at a single statutory provision, fewer than 10 words in it. And the key word is alternative. That word has a single definition no matter what dictionary you look to. And it's that there are two things that are mutually exclusive. So if one thing is chosen, the other must be rejected. If a period of home detention is chosen, an equal period of imprisonment must be rejected inasmuch as we're at the statutory maximum for the combined terms. With respect to the circuit split, the one decision that runs against us was among the earliest decided and frankly does not stand up under even light scrutiny. It had two points to make about why supposedly the statute should be read as the government reads it here. The first is that home detention and imprisonment are not equivalent. Certainly that's true. That does not mean that home detention cannot displace an equal period of imprisonment if Congress so mandates. But there's nothing that says that if you give home detention it's to be considered the equivalent of imprisonment for purposes of the months of imprisonment that you can give. I mean, you make a leap. You say home detention can be given only as an alternative to imprisonment. And you say, aha, so when home detention is given, we must consider that equal to imprisonment for purposes of a statutory cap. To my mind, I read the provision that it's equal to imprisonment, meaning that after imprisonment's over and you're in probation or supervised release, you can impose a condition. And that's really what this is. Impose a condition of home confinement. But you can only do it if you, judge, believe that you really think this person needs to be confined some more. I mean, how do you get away from the concept that, number one, it's a condition of supervised release and probation? I mean, once you say it's that, it's not imprisonment under the guidelines. And two, how do you make the leap from just the language that it's an alternative to, to say it's equal to for purposes, should be counted as equal to for purposes of the number of months imprisonment you can give? Well, Your Honor, I would suggest it's functionally equal to. Okay, functionally equal to. So when I'm giving out home detention as a condition on supervised release because I want this person to be confined, you know, functionally, okay. But how do you get beyond that? It has to count against the 24-month cap. Yeah. Right. Your Honor, respectfully, I don't believe we're pulling a rabbit out of a cap. To understand why- Wait, did you say pulling a rabbit out of a cap? A cap. A cap, I suppose. I don't know if you could fit one in a cap. We should have had you in the afternoon. It's going to be a long day. The reason that home detention must count toward the statutory maximum is because we need to read subsections E3 and E4 together. Now under E3, a court can impose a term of imprisonment only upon finding a violation of supervised release by preponderance of the evidence. And under E4, a person could be sentenced to home detention only as an alternative to incarceration. So necessarily, that means that the person must be subject to incarceration if a court is to place them under home detention. If it can only be an alternative- But if it's a condition, if the only way you get home confinement is a condition imposed on supervised release or probation, the person has to be on probation or supervised release when it's imposed and the imprisonment's over. I mean, I was a district court judge and you have imprisonment, then you have probation or supervised release, and if this is a condition imposed on probation or supervised release, you're not in the imprisonment phase. No, you're not in the imprisonment phase. For purposes of counting. You are for purposes of counting, I would suggest, Your Honor. The point is that this is what Congress has said, by the language only as an alternative to incarceration. Well, why can't you read it the way I'm reading it that says, you know, special, it's in the special conditions. It's way down there in 19. And you can impose this, you can impose home confinement, but only as an alternative to imprisonment. So if I, as a district court judge, say, you know what, I'm going to confine you, and maybe I'm confining you to your, you know, 8,000 square foot house. Did we have one of those? Yes, we did. Okay. With a spa and air conditioning. You know, because I just think, you know, I just think I want to do this. But I don't really believe that you need to be confined. And you probably violated the spirit of the guideline in terms of what, when you're really supposed to give home detention. That's the way I, an alternative way that I would read that provision. Why is that not permissible? Well, the first point I would. Especially, and let me add, because there's notes changed under those guidelines to say, if you don't think it's good enough, you can confine the person to two rooms in that, I mean, you can take away the things that would otherwise be not confining. Take away the entertainment room. Exactly. Can't watch the high definition TV. Right. Well, as a first matter then, Your Honor, I'll point the court to its decision in the United States v. Porat, where it stated that home detention is perhaps among the most onerous conditions of supervised release. So let's. I would argue that. But that was, the person was being detained there in Israel. That was the issue decided. But in deciding the issue, the court paused to stress how serious a condition home detention was. And that's the point I would just make in response to. But that doesn't necessarily mean, that's a statement about the restrictions on one's liberty. But that does not necessarily mean that it is counted against 24-month cap for terms of incarceration. No. Porat doesn't hold that it's counted toward the 24-month cap. I just wanted to stress that home detention is restricted. In that regard, community detention, community confinement does not have the same kind of language, does it? No. In community confinement, the government argues this is more restrictive than home confinement, isn't it? The government argues that. I'm not here today to enter that debate. The point is that Congress has spoken. You're getting into it, kicking and screaming. Because isn't that an inconsistency in your argument? No, I don't believe there is, Honor. Congress has spoken to home detention. It hasn't spoken to community confinement. We're not operating here from a bare slate of what the most punitive punishments are. Congress has stated that home detention can be imposed only as an alternative to incarceration. But you argued Porat. Congress didn't say that it can be imposed only as a condition of supervised release. I understand that. But you argued Porat to show how restrictive and punitive, although you didn't use that word, home detention is, and the natural extrapolation from that, and it makes some sense, is that because it's such an imposition on one's liberty, you have to count that as though it were incarceration for the 24-month cap or hat, depending on whether you're talking about incarceration or a rabbit, I guess. But you could also then say, well, wait a minute. If community confinement is even more restrictive, there's nothing to suggest that has to be counted against the 24-month cap. Why would it make any sense to then count house arrest, less restrictive, against the 24-month cap? That may not be very clear. Why would you treat home confinement the same as imprisonment and not treat something which is even more restrictive, community confinement or community detention, the same as imprisonment? Well, the reason we wouldn't, Honor, is because we're not arguing from some general notion about what the most punitive punishment is. We're arguing from very specific language in a statute which addresses home detention. Regardless of what the truth is about the relative restrictiveness of community confinement and home detention, what Congress has spoken to is what a judge must do if that judge is combining incarceration and home detention. Let me just try this. Your time is almost up. You did not really get into the April 3003 amendments in your brief, but I think we're all agreed now, maybe not, but let me know if I'm wrong, that what we're talking about here is a 24-month cap on imprisonment. Maybe that includes minus home detention per revocation. Do you agree on that? If the court is of that view, we're entitled to relief in this case because it's a single revocation. That wasn't the question. As far as what the PROTECT Act states, I think there may be more ambiguity than the government suggests. It's an addition of two words to subsection 3583E3. The legislative history – I think this is a no that you're giving me now, right? The question was whether you agreed with my statement. I think you do not agree with my statement. As a defense lawyer, I don't, Your Honor, because it will make it harder on defendants in the future. I'm not – You're not a reasoning, logical, and homo sapien. Assuming you are. I'm not a sapien, but the other part is. I will then argue that given the ambiguity of the two words added, any such, and the complete lack of revelation to be drawn from the legislative history, which is entirely about what's to happen to sex offenders, that the rule of lenity is going to prohibit the government's interpretation. Okay. Thank you very much. Thank you, Your Honor. Your Honors, good morning. May it please the Court. I'm Robert Salzman on behalf of the government. Did you think this was going to be an en banc? No, Your Honor. Okay. You're not welcome to see us unless it's an en banc argument. Your Honor, it is such an honor to appear here that I hope – I hope I am not limited to en banc arguments. The office really doesn't want home detention to count as a prison. That's exactly what this means. Your Honor, I'm here with Frank Costello, and what happened when this case was briefed is this is an esoteric issue, and I was interested in it. Okay. So here I am. Mr. Costello has important things to do, like the original prosecution of Ms. Williams for bank robbery, which is what leads us here. Okay. And you don't have that much important to do, so you can move it over to this case. Let me start off with a question that goes to the heart of it, for me at least. Yes, sir. What – 18 U.S.C. Section 3563B19 talks about conditions on probation and supervised release by reference, and it says, but home detention may be imposed only as an alternative to incarceration. Now, we've got to give some meaning, I think, to only – but only as an alternative to incarceration. What – if it doesn't mean what your friends across the aisle say it means, what does it mean? I've puzzled and puzzled and puzzled, and I'm having trouble coming up with some reasonable meaning to give it. Your Honor, we admit to a bit of puzzlement ourselves, and the best answer we can give, having thought about this very hard, is that that language is there for emphasis. That language is there to make clear, as Judge Randell's question suggested, that home detention is what you choose when you've decided not to impose incarceration. We reach that not so much from the plain language – Isn't that the same thing, though? Because – well, if that's right, if home detention is what you choose when you've decided not to choose incarceration, then why shouldn't, in terms of the cap, home detention and the confinement that comes with it be counted against – or maybe I just don't understand you, but it seems like you're saying, obviously it's an alternative to incarceration. You can't do both. You can't – unless the person's home is a prison, you can't do both. So to go with Judge Stapleson's question, why doesn't it have to mean that you have to count that against the 24-month cap? Because it is a great leap to say that a condition like this reduces a statutory maximum of imprisonment, and that when you have language like this, which we admit is not a – Isn't that different, though? Because I meant to ask Mr. Downing that. I didn't think we were talking about whether or not this reduces the statutory maximum of imprisonment, or maybe you get there after enough revocations. I thought right now we're only worried about the 24-month cap on grade C – revocations or grade C violations. But, Your Honor, that is a statutory maximum. And to be clear on this, obviously I disagree with what my friend said about the 24-month cap. It is for each revocation, but for each revocation there is a statutory maximum of 24 months' imprisonment. And so the argument that's being presented to Your Honors today is that that 24-month cap is reduced in terms of imprisonment, even though that portion of the statute says, quote, in prison, that that is reduced because you've decided, as a condition of supervised release, to impose home detention. That, to us – Now, let me put the rabbit in the hat there, because it may be that something else in the statute – and this is the only asthma alternative to incarceration language in Subsection 4 – that is part of the same statute and statutory scheme. So maybe, in fact, Congress did intend to reduce the 24 months. And the thing – and let me – before you respond to that, the thing that makes me think that maybe the argument is somewhat based in sector, language, and policy. Every discussion I've been a part of in terms of states' guidelines and federal guidelines, and there have been a lot of those discussions, the concern about home confinement has always said it broadens the net. And this is with criminologists, with probation professionals, with judges, academicians. There's always a concern if we move toward home confinement, we're widening the net, and people who would otherwise get probation are now going to be confined in their homes, and we don't want that. And so there's always a concern that when you use home confinement, you don't broaden the net, you don't put probationers in home confinement, you take people who would go to incarceration, and you move them to home confinement. And if that's the policy driving this, and there's nothing on the record to suggest it is, except that it's consistent with that language, then why wouldn't that language fit perfectly into that kind of a policy consideration? Well, it could. It could also cut the other way. One could say that one should not have the home detention option at all, if that were the circumstance. The legislative history here is interesting. But aren't you worried about incarceration rates? Well, there's debates on both sides of whether we want more incarceration or less, but the legislative history is interesting. The statute, 3563, which Judge Stapleton appropriately focuses on, that was part of the Omnibus Comprehensive Crime Control Act of 1984. That is the act that gave us the sentencing guidelines, the revolutionized sentencing. And this home detention provision of the 20 or so conditions listed for supervised release was not there. And it was added in 1988 by itself with this odd language that we see before us. It was added to 3563. It was added to 3583 regarding revocation or modification. And it was added to the sentencing guidelines. And even the Sentencing Commission said, we're adding this language, I think it's 5F1.2, just because Congress added it in the statute. No one provides any explanation in the legislative history or in the Sentencing Commission of what these additional words mean. And in our view, when you look at it, this is not part of a grand scheme to calibrate home detention and imprisonment. This is the option that they were providing in 1988 to make home detention a condition of supervised release. And this is the way they wrote it, that if you're not imposing imprisonment, you can do home detention. Let me give this hypothetical just... It seemed to me, and maybe this is just furthering, that if Congress really wanted to do that, or the Sentencing Commission, somehow there'd be a... They talk about months imprisonment, months imprisonment. There are charts with months imprisonment. Somewhere it would seem it should reference that this can be fulfilled either by prison or by imposing a short prison term plus a supervised release term, you know, with home confinement. It seems to me there's a bit of a leap, and I know that's making arguments. That is an excellent point, and I'm ashamed thinking here, standing here, that we didn't think of that in our brief. Because what that makes me realize is that the Sentencing Commission does do that, but for lower sentences. There is the provision we all know of for Zones A and B that explicitly say you can satisfy half of the sentence in Zone C and all of the sentences in Zone B by home detention, community confinement, these alternatives. So clearly, they know how to explicitly say this when they want to say it. And I think that's an outstanding point that I wish I had thought of before this moment. The other point that I wanted to make that I don't think was completely clear in our brief is looking at it as a condition of supervised release, which is what it is. And as Judge Stapleton said, in looking at 3563, think of it this way. What if the court here imposed 19 months of imprisonment and 12 months of supervised release with no conditions? That was the sentence. And then came back when the person served the term of imprisonment and after 19 months the judge said, you know, I've been thinking about this and I want to call you back in. I'm going to modify the terms and I'm going to include home detention. Undoubtedly, the judge can do that under 3583D, the fourth clause. It doesn't require revocation. It's a modification. If the court can do that and say, I'm not putting you back in prison. This is an alternative. I'm not revoking you again. But I think you should have home detention. That has historically been, you know, within the power of the district court. So I agree with what your honors are all saying that if we're giving out prizes for statutory interpretation, this statute is not on the list. But we have to interpret it in a logical fashion. And in a logical fashion, it has to mean that when you're giving home detention, you're not giving imprisonment, but it does not reduce the statutory maximum imprisonment. And certainly you have the oddity involving community confinement that that would then produce, which I think your honors well understand from our brief that I don't need to go through again. Would you address plain error? Yes, thank you very much. I do want to address plain error because that's important here. This court has, you know, been very faithful. Your honor, Judge Randell wrote the court's leading decision, I think, is Adams in 2001 regarding the universal applicability of plain error. And that has to apply here. To say that a sentence above the statutory maximum is always plain error, it's always a fundamental wrong, that puts the cart before the horse. You first have to decide that you have a plain error. We certainly agree that if at the end of the analysis the error is plain, that someone was sentenced above the statutory maximum, then yes, probably that person is due relief. But you have to go through the steps. There are many Supreme Court cases where people have argued not only that their sentences were too long, but that they shouldn't even have been convicted. And the Supreme Court faithfully applies plain error review in deciding whether you even get to that question. Well, how about the existence of conflicting opinions, as Judge Stapleton points out? Well, that's fundamental. I mean, you do not have plain error where the error is not plain. And certainly here we have a split in the circuits. We have a healthy debate here over what the statute means. It is not plain error. But I think you also have to look to, I don't want to abandon the other prongs, that it offends fundamental rights and that it offends the notion of justice, such that this Court should recognize the error. This is a pretty unique case. This is a case, and I noticed this in reviewing the appendix again today. The defense got a break. Judge Davis clearly wanted to impose the maximum, and the maximum is 24 months. He asked, what is the most I can give? And he had every reason to do that. And the defense gave the wrong information, and the government failed to correct it. The defense said, well, you know, you gave five months before for one of our last violations, so that reduces it from 24 to 19. And so the judge gave 19 months of imprisonment, followed by supervised release. That information was wrong, because under the 2003 amendment, you'd no longer reduce it by the previous terms that were given. It's 24 months every time. So the defense is playing an interesting game here. I mean, do they want to go back to Judge Davis, now that we're all, you know, keenly focused on this, and tell him, well, I should get less home detention, but you should give me five more months in prison? And what the judge could also do is he could say, all right, you're telling me there's a problem with home detention. Let's forget about that altogether. I'm going to give you 24 months in prison. I'm going to give you seven months of community confinement, and that's a perfectly legal sentence. That gets you right into that third and fourth prong. Are we really dealing with a case here in which the defense is showing a violation of fundamental rights and an error that this court should correct? This is an egregious record, it's sad to say, of a violation of supervised release. And it's a judge who appropriately is coming down on the defendant, not giving up on the defendant. What's also notable about this sentence is the judge wants to keep working with the defendant. Community confinement, home detention, giving every last chance to rehabilitate this person. This is not a violation of fundamental rights. And so I think plain error is a very important part of the calculus. Do you ever get to a point where the person has served so much time on the revocations, like 24 months, 24 months, 24 months, that you're just way beyond the statutory maximum? Or is it your view that the statutory maximum for the offense now sets the overall cap on revocation time? Under the current law, you can get 24 months over and over again if you keep violating. You cannot, the amount of extra supervised release you could get to follow as a tail decreases and would eventually get down to zero based on all of that imprisonment. But yes, under the current law, and by the way, that's why I disagree with my colleagues on the other side about the 2003 law. The only reason for the addition of those two words was to make it clear. There had been a lot of debate before 2003, a lot of criticism from the Justice Department, that the amount of time you could get kept decreasing as you got time, even if somebody was egregiously violating supervised release. That was the only point of that amendment, was to make it clear that you can now get it. It doesn't happen. I can't tell you I've heard of someone who's serially getting maximum imprisonment. Right. Well, the other thing that could happen, and this also plays into the plain error review, as we mentioned in our brief, is the maximum in this case really is not even 24 months, because there are five counts. And this court held in these that a court, if it's reasonable, can stack these two or three year sentences, whatever have you, on individual counts. You can revoke counts individually. Ms. Williams really is facing 120 months, you know, if she continues to press her luck, and Judge Davis approaches it that way. Thank you very much. Thank you. You really want to win this one. Your Honors, with regard to the question. Before I start, you know, Mr. O'Sullivan raises a very intriguing possibility. What if you were to go back to Judge Davis and you win, and he gets to re-sentence your client, and he's not upping the ante here, it's not the kind of situation where he's penalizing you for taking the appeal, because he said then he wanted to give your client the most he could give her, the maximum. He asked, what's the maximum I can give her? So let's say we send it back, and it's now fairly clear under the 2003 amendments, you can give her 24 months. So you win. She goes back, and the 19-month sentence gets vacated, and he imposes a sentence of 24 months. I'm just curious about how that spins out. It's not the issue before us, but. Well, Your Honor, we've made the strategic determination we've made, and we'll take our chances with Judge Davis on that. On the point of addressing that 2003 amendment, one very quick thing I'd like to say is that it's not been briefed. The government has placed it in the footnotes, and it's not presented by this case. Well, I'm not sure it's not presented, because the meaning of what subsection we're talking about, I mean, that clearly implicates the 2003 amendment.  We have to consider that, though, right? Because that's before us. It's in the statute. Well, you do have to read it when you're reviewing the statute, but I don't think it applies to the situation here. I think the words only as an alternative to incarceration are the operative ones. As far as the question of plain error and the existence of a circuit split, I'd refer the Court to the Second Circuit case of United States v. Brown, 352F3654. There the Second Circuit said, We can, in certain cases, notice plain error in the absence of direct precedent or even where uniformity among the circuits or among state courts is lacking. Now, the one circuit that's outlying here, the Fourth Circuit, in its Hager case, first of all, is a split decision, a 2-1 decision. Second, did not have the benefit of the much more extensive analysis in the leading case, the Fifth Circuit's decision in Ferguson. And it's also before O3. It's also before O3, that's true. It doesn't have to be a plain error issue, I understand that. Right. All right. Well, let me ask a question. The guidelines, the chart, sentencing at the lower level, it's specific that you can combine imprisonment and home detention in coming up with the amount. It's the old, if they wanted to do so, they knew how to do so, and they didn't do so? Right. And I think the key thing about that provision is that it states that home imprisonment is substituted on a 1-to-1 ratio. That's 5C1.1 of the guidelines. So, yes, it does limit it to two zones. Exactly. But that's the Sentencing Commission's determination, which has, of course, now is advisory. And Congress has stated that the 1-to-1 ratio is a statutory mandate by its only as an alternative language. So I wouldn't get too distracted by the limitations the Sentencing Commission has placed on that. I'd focus on the fact that it, too, has found it to be a 1-to-1 ratio. Moreover, that particular provision of the sentencing guidelines was adopted in response to the 1988 legislation that Mr. Zalismer has referred to. And to cite just one portion of what I would agree with Mr. Zalismer, it's not a terribly revealing legislative history, but to find what guidance we can, Representative Kastenmeier, who was then the chair of the subcommittee of the House that reported this legislation, described the provision as being crafted carefully to create a new alternative to incarceration. It was, I think, an effort to inaugurate home detention as something in federal law, as you, Judge McKee, have stated. It has been a long-running debate. If the Court has no further questions, I thank you for your time. Thank you very much. Let's take a matter under advisement and we'll move on. 500 recess before we do firm effort.